MICHAEL J. SHEPARD (Bar No. 91281)
NEIL A.F. POPOVIĆ (Bar No. 132403)
Heller Ehrman LLP
333 Bush Street
San Francisco, CA 94104-2878
Telephone: (415) 772-6000
Facsimile: (415) 772-6268

Attorneys for Defendant DAGOBERTO G. GARCIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br><br>    v.<br><br>DAGOBERTO G. GARCIA<br><br>           Defendant. | Case No.: 07-00806 (CW)<br><br>**SENTENCING MEMORANDUM**<br><br>Date: July 9, 2008<br>Time: 2:00 p.m.<br>Judge: Hon. Claudia Wilken |

Pursuant to Criminal Local Rule 32-5(b), defendant Dagoberto G. Garcia respectfully submits this sentencing memorandum, which includes objections to certain characterizations in the Sentencing Recommendation submitted by the Probation Office.

**I.     INTRODUCTION**

Dagoberto G. Garcia has entered into a Plea Agreement pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure that fairly resolves the matter before this Court. The Plea Agreement provides that Mr. Garcia should be sentenced to 41 months incarceration. All parties to this matter agree that a 41-month sentence adequately and fairly punishes Mr. Garcia for his crime.

## II. FACTUAL BACKGROUND

Mr. Garcia pled guilty on April 30, 2008 to one count of forcible assault on a federal employee in the performance of official duties, 18 U.S.C. § 111(a)(1). The offense involved Mr. Garcia approaching a United States Postal Service employee on December 5, 2007, and asking the mail carrier to give him his wallet and his money.

Mr. Garcia was arrested in Oakland on December 5, 2007. He was released to New Bridge Foundation on January 23, 2008, where he remained until February 2, 2008. A warrant was issued on February 4, 2008, and Mr. Garcia was arrested by the Oakland Police Department on February 7, 2008. He has remained in custody since that time.

## III. THE AGREED-UPON SENTENCE IS SUFFICIENT TO COMPLY WITH THE PURPOSES OF SENTENCING UNDER 18 U.S.C. § 3553(a)

Under the Sentencing Reform Act, the Court must impose a sentence that is "not greater than necessary, to comply with" the traditional goals of sentencing. 18 U.S.C. § 3553(a). To determine the sentence, "district judges must consider, along with the advisory guideline range, the goals and purposes of sentencing as reflected in § 3553(a) and fashion an appropriate sentence that furthers these objectives." *United States v. Ameline*, 400 F.3d 646, 656 (9th Cir. 2005). As this Court is aware, the factors to be considered under § 3553(a)(1)-(2) fall into three general categories: the history and characteristics of the defendant; the nature and circumstances of the offense; and the interests of the public.

A sentence of 41 months imprisonment (the high end of the Sentencing Guidelines range) and three years supervised release, as described in Mr. Garcia's Plea Agreement, is sufficient to satisfy those goals and purposes, and it adequately reflects the severity of Mr. Garcia's offense—especially in light of his youth, drug problems and possible mental health issues. Those same circumstances make it particularly important that he serve his time at a facility where he can further his education, obtain job training, participate in a drug treatment program and receive mental health assessment and, if called for, treatment.

### A. History and Characteristics of the Defendant

Mr. Garcia was born and raised in Oakland, California. He has lived in Oakland his

entire life, with the exception of one year in Jalisco, Mexico, where he was sent—against his wishes—to live with relatives of his father. He did not like living in Mexico, and he voluntarily came back to California. Mr. Garcia is 19 years old; the events at issue in this case occurred when he was only 18. He had some troubles with the law as a minor, although in each case, he was one of several youths involved. This is his first and only offense as an adult.

When Mr. Garcia was seven years old, the car he was riding in with his mother was hit by a drunk driver. Mr. Garcia's face broke the windshield and he was knocked unconscious. He was hospitalized for several days and received stitches, leaving him with a prominent three-inch scar on his forehead. He still suffers from pain in his back. Mr. Garcia does not know whether it was ever determined if he sustained any permanent brain injury.

Mr. Garcia started using alcohol and marijuana in his early teens. He also has a history of recreationally using prescription drugs, which he obtained from his friends. Mr. Garcia now recognizes that he has a drug problem, and he understands that drugs and alcohol have caused him to make bad decisions and engage in conduct that he now recognizes he should not have engaged in. He wants to address his drug problem by participating in a drug treatment program while in custody, and by following up in whatever way he has to upon his release.

Mr. Garcia did not finish high school. He stopped going to school altogether in tenth grade, and he did not obtain a general equivalency degree (GED). He now recognizes he needs to get his GED—to get a good job, and/or to continue his education—and he very much wants to do so. Mr. Garcia has never had any regular employment. He worked periodically with his father doing landscaping, but he has no other employment history. Mr. Garcia desperately needs to complete his education, get free of drugs and obtain marketable job skills if he is to change his path when he gets out of prison. He also recognizes, as others have noted, that he may have mental health issues. He is amenable to further psychological assessment and, if appropriate, mental health treatment.

### B. Nature and Circumstances of the Offense

The offense conduct is described in paragraph 2 of the Plea Agreement. No one was injured as a result of the offense. The agreed upon sentence takes full account of the nature and circumstances of the offense, including the use of a weapon and Mr. Garcia's criminal history as a juvenile. This is his first and only offense as an adult.

### C. Mr. Garcia Accepts Responsibility for His Actions

Mr. Garcia accepts full responsibility for his actions. He wishes to apologize for what he did. He is glad no one was hurt, and he recognizes that it was wrong to scare and threaten the mail carrier, whether or not anyone was hurt.[1]

## IV. THE GUIDELINES CONFIRM THAT A SENTENCE OF 41 MONTHS IS APPROPRIATE

The factors in § 3553(a) support sentencing Mr. Garcia within the guideline range. The PSR correctly concluded that Mr. Garcia's adjusted base offense level is 18, and his criminal history score is 3, placing him in category III, resulting in a sentencing range of 33-41 months. The recommended sentence is at the absolute high end of the guideline range.

## V. GARCIA OBJECTS TO CERTAIN MISCHARACTERIZATIONS IN THE SENTENCING RECOMMENDATION

Mr. Garcia does not object to the sentence recommended by the Probation Office. However, the narrative "Justification" in the Sentencing Recommendation submitted by the Probation Office contains several mischaracterizations that should be corrected—so the Court can be sure he receives an appropriate designation from the Bureau of Prisons (BOP).

Mr. Garcia committed the offense when he was 18. He was undereducated, suffered from substance abuse and had no meaningful employment. He may also have mental health issues. As noted above, it is crucial that Mr. Garcia have an opportunity to obtain his GED, participate in a drug treatment program, get job training and, if appropriate, receive mental health treatment while he is in custody. Each of these elements is necessary for the others to be most effective—i.e., Mr. Garcia needs to fix his drug problem in order to complete his

---

[1] Mr. Garcia has written an apology to the Court. A copy of his apology is attached hereto as Exhibit A.

Heller Ehrman LLP

4

SENTENCING MEMORANDUM OF DAGOBERTO G. GARCIA
CASE NO.: CR 07-00806 (CW)

education, and he needs to complete his education in order to get the most out of vocational training. Accordingly, he needs to go to a facility where he can address all of these issues.

The Sentencing Recommendation discounts Mr. Garcia's desire to pursue drug and mental health treatment based on his failure to follow through with such treatment in the past. But the circumstances will be very different when he is sober and in custody, free of whatever outside influences may have contributed to his prior problems. The recommended sentence (which Mr. Garcia does not contest) is already quite severe: he has drug, education and mental health issues; this is his first adult offense; and the sentence is at the very high end of the guideline range. Without a doubt, he is being adequately punished. The Court's sentencing recommendation for this young man should also address the vital need for rehabilitation—by recommending that he be incarcerated at a facility that includes residential drug treatment, GED completion, vocational training and mental health treatment. It is also important that he be as close to home (Oakland) as possible, so Mr. Garcia can maintain ties with his family.

The Sentencing Recommendation improperly characterizes Mr. Garcia as a flight risk, commenting that he "has ties to Mexico and previously relocated to that country." The Court should strike that characterization from the Sentencing Recommendation, because it is not accurate, and allowing it to remain could jeopardize Mr. Garcia's ability to participate in the programs he needs to address his substance abuse, educational, vocational and mental health issues. As Mr. Garcia told the Probation Officer who interviewed him, he was born and raised in Oakland, his family sent him to Mexico (it was not his choice), he did not like it there, and he voluntarily returned to Oakland. In addition, although Mr. Garcia walked away from the facility at New Bridge, he did not flee the area, but rather returned to Oakland, where he was subsequently arrested. He has been in custody ever since.

Mr. Garcia will be 21 years old when he is released from custody—still a young man, with the potential for a long, productive life ahead of him. That potential, however, depends on Mr. Garcia's ability to receive drug treatment, obtain his GED, participate in job training and receive whatever mental health treatment he needs. Under the circumstances, it

is critical that Mr. Garcia serve his time at a facility that provides the relevant programs, and that his Sentencing Recommendation not include any inaccurate references that might interfere with an appropriate facility designation by the BOP.

In addition, Mr. Garcia's family has very limited means, and they will not be able to visit him unless he is housed in a facility they can travel to by car. In particular, Mr. Garcia's mother cannot afford to take extra time off work to travel far away, or to travel by plane.

## VI.  CONCLUSION

The defendant respectfully requests that the Court approve his 11(c)(1)(C) Plea Agreement, and that he be sentenced according to its terms, with a recommendation that he serve his time at a nearby facility that provides drug treatment, GED assistance, vocational training and mental health assessment and treatment.

Respectfully submitted,

DATED: July 2, 2008                              HELLER EHRMAN LLP


By */s/ Neil A.F. Popović*
    Michael J. Shepard
    Neil A.F. Popović

Attorneys for Defendant
DAGOBERTO G. GARCIA

---

6
SENTENCING MEMORANDUM OF DAGOBERTO G. GARCIA
CASE NO.: CR 07-00806 (CW)